726 So.2d 892 (1999)
In re Robert B. SCHAMBACH.
No. 98-B-2432
Supreme Court of Louisiana.
January 29, 1999.
Rehearing Denied February 26, 1999.
Charles B. Plattsmier, Counsel for Applicant.
*893 Robert Bartley Schambach, Jay Christopher Schambach, Counsel for Respondent.
PER CURIAM[*]
This attorney disciplinary proceeding arises from formal charges instituted by the Office of Disciplinary Counsel ("ODC") against respondent, Robert B. Schambach, an attorney licensed to practice law in the State of Louisiana, who is currently suspended from practice in an unrelated matter.[1]

UNDERLYING FACTS
Complainant, Dianna Womble, first retained respondent in 1985 in connection with litigation involving a trust. Respondent successfully handled the matter. Over the next several years, respondent and Ms. Womble became personal friends. He advised her in several other legal matters, including a succession proceeding and the sale of immovable property. Sometime around 1990, respondent began engaging in an extra-marital affair with Ms. Womble.
In 1991, respondent borrowed $30,000 and $10,000 from Ms. Womble,[2] and gave her a promissory note in the amount of $44,000. Ms. Womble sought repayment on the promissory note in 1992; however, due to financial problems in his solo legal practice, respondent was unable to pay her back. By 1993, the personal relationship between Ms. Womble and respondent deteriorated, and she ultimately filed suit against him and his wife in an attempt to recover on the promissory note.[3]

DISCIPLINARY PROCEEDINGS
In 1996, Ms. Womble filed a complaint against respondent with the ODC, stating that although she was disabled from working and had virtually no funds to live on, respondent refused to pay her back. While he agreed to pay her living expenses after she had filed suit against him, he let her health insurance lapse, and on two occasions her electricity, telephone and water were turned off. When she returned to work in January of 1994, she was forced to file for bankruptcy.[4] Ms. Womble contended the respondent took advantage of his position as her attorney by luring her into an illicit sexual affair during a vulnerable period in her life and borrowing over $40,000 in funds and failing to repay her.
After an investigation, the ODC instituted formal charges against respondent, primarily alleging his conduct amounted to a conflict of interest, in violation of Rule 1.7 of the Rules of Professional Conduct,[5] and a prohibited business transaction with a client, in violation of Rule 1.8 of the Rules of Professional Conduct.[6] Additionally, the ODC alleged respondent *894 failed to cooperate with the disciplinary investigation, in violation of Rule 8.4(g).[7]
Respondent failed to file an answer. However, he later filed a motion seeking a hearing for the purpose of offering evidence in mitigation. That motion was granted, and a hearing was held before the committee on the issue of mitigation.
At the hearing, Ms. Womble testified respondent had assisted her in most of her legal and personal matters. She stated she was satisfied with the respondent's legal representation, and testified their sexual relationship was both mutual and consensual. According to Ms. Womble, she loaned respondent money based on their friendship and not because he was her attorney. She stated she did not think he intended to steal the funds, and that he did intend to pay her back.
Edward Shwery, Ph.D., a clinical psychologist, testified he saw respondent for the first time one month before the hearing. He characterized respondent as being psychologically immature and suffering from chronic anxiety and depression, which developed during the ten years prior to the incident in question. Dr. Shwery further testified that respondent utilized the defense mechanism of denial, which he explained as being like "sticking one's head in the sand" when confronted with problems. For example, when several prior disciplinary complaints were filed against respondent, his response was to close his law practice.[8] Rather than seeking counseling when he had marital problems, he engaged in an affair with Ms. Womble. Although respondent sought treatment with a psychiatrist for a short period of time in 1993, he stopped because he thought he had his problems under control. Dr. Shwery felt respondent's clinical problems worsened in the summer of 1997 due to a series of personal tragedies that "overwhelmed" his defenses. These included the recent deaths of five family members and a divorce from his wife. Respondent again sought treatment with a psychiatrist and a social worker. Dr. Shwery testified respondent's actions were never deceitful or calculating, and that respondent's prognosis, in terms of functioning as a lawyer, was quite good if he remained in treatment.
Respondent testified on his own behalf. Respondent indicated he was admitted to practice in 1976. He was currently suspended from the practice of law, but he had not sought reinstatement despite his eligibility. Respondent testified he borrowed the funds from Ms. Womble to keep his law practice operating, but he ultimately failed and had to file for bankruptcy. Respondent stated he continues to seek treatment, and indicated he paid restitution after borrowing the funds from his family, which he asserted he would have paid back regardless of the outcome of this proceeding.

Hearing Committee Recommendation
The hearing committee found respondent acted wrongfully in having a sexual affair with his client and in entering into a business transaction with her. The committee found the relationship between Ms. Womble and respondent was more personal than professional, but concluded this did not excuse the respondent's actions. The hearing committee expressed concern as to whether the respondent was remorseful since he made no effort to provide restitution until the eve of the committee hearing.
Based on these findings, the committee recommended respondent be suspended for a period of eighteen months, commencing on April 15, 1998, the date of the hearing. During that time, the committee recommended respondent undergo psychological counseling/therapy, *895 with quarterly reports provided to the ODC. At the end of the period of suspension, and upon recommendation of respondent's therapist, respondent could apply for readmission, subject to a two year period of probation with conditions.[9]

Disciplinary Board Recommendation
Based on the record, the disciplinary board agreed that respondent's relationship with Ms. Womble was principally personal and not professional. Citing Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567 (La.1986),[10] the board also recognized the loans were based on a friendship, and did not stem exclusively from the attorney-client relationship.
In mitigation, the board noted respondent had not applied for readmission from his prior suspension at the time the instant formal charges were filed. Moreover, it recognized respondent had a history of clinical depression and treatment, and he suffered tremendous personal loss in his family.
Based on these considerations, the board recommended respondent be suspended from the practice of law for a period of one year for the instant offenses. Given the fact that respondent was currently suspended, it determined this sanction would be "roughly equal" to that recommended by the committee, since respondent could reapply for readmission on both suspensions in one proceeding.[11] The board further recommended that as a condition precedent to readmission, respondent must provide proof that he is continuing therapy for chronic anxiety and clinical depression.
One board member concurred, stating respondent should provide proof upon reinstatement of successful continuing treatment. Another member concurred, indicating a more severe sanction would have been appropriate if the sexual relationship had not been mutual and consensual between the parties.
The ODC filed an objection to the board's recommendation. Pursuant to Supreme Court Rule XIX, § 11(G)(1)(b), the matter was set on this court's docket for oral argument.

DISCUSSION
At the time of their recommendations, neither the hearing committee nor the disciplinary board had the benefit of our opinion in In Re: Ashy, 98-0662 (La.12/1/98), 721 So.2d 859. In Ashy, we imposed a two year suspension on an attorney who attempted to develop a sexual relationship with a female client in exchange for making certain efforts on her behalf as her lawyer. We found that although sexual relations or sexual misconduct with a client was not specifically addressed in the present Rules of Professional Conduct, such conduct could violate several existing rules. For example, applying Rule 1.7(b), we found sexual harassment of a client could adversely affect the quality of representation by undermining the client's trust in the attorney. Likewise, applying Rule 2.1, we *896 found a sexual relationship could impair the lawyer's objectivity and independent professional judgment.
Although the instant case, involving a consensual relationship, is distinguishable in some ways from Ashy, we find that respondent violated the Rules of Professional Conduct by allowing his personal relationship with Ms. Womble to interfere with his professional responsibilities toward her. During his on-going representation of Ms. Womble, respondent borrowed a substantial sum of money (originating from funds he had previously recovered on her behalf as her attorney) from her when he knew she was disabled and in a vulnerable position. He then discharged this debt in bankruptcy, leaving Ms. Womble with virtually no funds for her living expenses and forcing her to file for bankruptcy. Respondent made no effort to make restitution to Ms. Womble until the eve of the disciplinary hearing in this case. Although we recognize that Ms. Womble ultimately testified on respondent's behalf at the hearing, the marked change in her testimony from statements in her earlier complaint, especially in light of respondent's payment of restitution, calls into question the credibility of her hearing testimony. Taken as a whole, we find the record supports the conclusion that respondent violated his duties to Ms. Womble, and this violation resulted in serious harm to her.
Considering all these factors, we conclude a three year suspension from the practice of law is an appropriate sanction in this case.

DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs and oral argument, it is the decision of the court that respondent, Robert B. Schambach, be suspended from the practice of law for a period of three years, said suspension to commence from the finality of this judgment. Respondent is assessed with all costs and expenses of this proceeding in accordance with Supreme Court Rule XIX, § 10.1.
NOTES
[*] Calogero, C.J. not on panel. Rule IV, Part II, § 3.
[1] In 1993, respondent was suspended from the practice of law for a period of one year and one day for commingling and conversion of client funds. In Re: Schambach, 610 So.2d 792 (La. 1993). Respondent has never applied for reinstatement from that suspension and therefore remains ineligible to practice.
[2] These funds apparently came from the trust money that respondent had previously recovered on Ms. Womble's behalf.
[3] Ms. Womble obtained a default judgment in her suit. Later, respondent and his wife filed for bankruptcy and listed the judgment as a debt. However, two days before the disciplinary hearing, respondent reimbursed Ms. Womble in the amount of $47,000, which represented the amount of the loans plus interest.
[4] It is unclear from the record whether Ms. Womble ever completed bankruptcy proceedings. She alleged in her complaint that she paid respondent on two occasions to file the petition for bankruptcy, but it was done improperly. Respondent testified that in 1993, while he was suspended from practice, she asked him to help her file for bankruptcy. Although he told her he was unable to represent her, he agreed to draft the pleadings for filing on her behalf, to be filed in proper person. He drafted the pleadings, which she filed. However, Ms. Womble failed to show up in court, so her petition was dismissed. Respondent helped her refile the papers, but the petition was again dismissed since she did not let the appropriate delay period pass between filings.
[5] Rule 1.7(b) provides in pertinent part:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests....
[6] Rule 1.8 provides in pertinent part:

As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. Furthermore, a lawyer may not exploit his representation of a client or information relating to the representation to the client's disadvantage.
[7] Rule 8.4(g) provides:

It is professional misconduct for a lawyer to:
Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.
[8] Respondent's prior disciplinary record consists of a suspension for one year and one day, followed by two years probation, for commingling and conversion. In Re Schambach, 610 So.2d 792 (La. 1993). In addition, respondent received admonitions in 1991 and 1995 for failure to cooperate.
[9] The committee recommended as conditions for probation that respondent continue counseling and have his practice monitored, as well as complete four hours of continuing legal education in ethics/professional responsibility. It further recommended that the two year period of probation was to run concurrently with the probationary period imposed by the court in his prior suspension.
[10] In Bosworth, an attorney borrowed $50,000 from his client to buy a boat at the time a large settlement was disbursed. The client filed suit for the unpaid debt. On the day of trial, the respondent entered into a settlement to pay off the debt. However, the respondent filed for bankruptcy and a complaint followed. This court found no merit in Bosworth's defense that the loan was intended as a favor and not a business transaction with a client. The court found Bosworth should have advised the client to seek outside counsel, and suspended his from the practice of law until he furnished proof to this court that restitution for the entire amount of the loan including interest and attorney fees had been made, and for a period of six months thereafter.
[11] Relying on In re: Crawford, 97-1002 (La.9/19/97), 699 So.2d 379, the board concluded the hearing committee erred in making the suspension retroactive. In Crawford, this court held the disciplinary board erred in recommending a suspension that would commence retroactively from the date the attorney was eligible for automatic reinstatement from his six month suspension, which term would have been automatically completed upon payment of bar dues. This court stated the suspension should be prospective, commencing from the finality of the court's judgment.